# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-60542-KMM

MY BUDDY DAVIS, LLC,

      Plaintiff,

v.

STARBOARD YACHT GROUP, LLC,

      Defendant.

_____ /

## ORDER

THIS CAUSE came before the Court upon Defendant Starboard Yacht Group, LLC's ("Defendant") Motion to Dismiss.  ("Mot.") (ECF No. 11).  Plaintiff My Buddy Davis LLC ("Plaintiff") filed a response.  ("Resp.") (ECF No. 15).  Defendant filed a reply.  ("Reply") (ECF No. 16).  The Motion is now ripe for review.

## I.      BACKGROUND

This is a contract dispute between a yacht owner and a yacht repair company arising under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, with claims arising under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The allegations are as follows.[1]

Plaintiff is the owner of a seventy-four-foot Buddy Davis vessel (the "Subject Vessel"). Compl. ¶ 2.  In March of 2021 "and on other occasions thereafter," Plaintiff hired Defendant to install various equipment on the Subject Vessel as recommended by Defendant, none of which had

_____

[1] The following background facts are taken from the Complaint, ("Compl.") (ECF No. 1), and are accepted as true for purposes of ruling on this Motion to Dismiss. *Fernandez v. Tricam Indus., Inc.*, No. 09-22089-CIV, 2009 WL 10668267, at *1 (S.D. Fla. Oct. 21, 2009).

been installed by the time Plaintiff initiated this action. *Id.* ¶ 5. The equipment is described as Seakeeper stabilizers, Humphree interceptors, and an Optimus steering system (the "Equipment"). *Id.* ¶ 3. According to Plaintiff, Defendant "represents that they are experts in the installation of" the Equipment, as Defendant's website contains at least two statements identifying Defendant as a "master" of its craft that employs creative problem-solving in stabilizer installations. *Id.* ¶ 2.

Plaintiff and Defendant entered into various agreements for the installation of the Equipment.

The Parties agreed the Seakeeper stabilizers would be installed pursuant to a March 26, 2021 agreement "and other oral and written exchanges" for a total cost of $133,878.00. *Id.* ¶ 6. Plaintiff has paid Defendant $110,000.00 for this work, but the Seakeeper stabilizers have not been installed. *Id.* According to Plaintiff, Defendant held itself out as an expert and, upon Defendant's recommendation, Plaintiff purchased a particular Seakeeper stabilizer—the Seakeeper 18—and paid Defendant 80 percent of the cost of the project, only to later be advised that the Seakeeper 18 "could not be installed in its intended location because there was insufficient clearance as required by the manufacturers for warranty and other reasons." *Id.* ¶ 10. Defendant "also advised [Plaintiff] well after the fact that the Seakeeper 18 . . . was now too small for the vessel and they recommended a larger version." *Id.* ¶ 11.

Likewise, the Parties agreed the Humphree interceptors would be installed pursuant to a May 15, 2021 agreement "and other oral and written exchanges" for a total cost of $29,657.19. *Id.* ¶ 7. Plaintiff has paid Defendant $20,817.00 for this work, but the Humphree interceptors have not been installed. *Id.* ¶¶ 7, 13.

And on Defendant's recommendation, the Parties agreed that an Optimus steering system would be installed pursuant to an April 16, 2021 agreement "and other oral and written exchanges"

for a total cost of $18,564.39, which Plaintiff has paid to Defendant in full.  *Id.* ¶ 8.  However, the Optimus steering system has not been installed.  *Id.*  Plaintiff alleges that Defendant's installation plans for the Optimus steering system were faulty and would render the system inoperable, which became clear "only after the system was bought and paid for" by Plaintiff.  *Id.* ¶ 12.  As a result, Plaintiff "was required to hire other experts in the field to devise a way in which the steering recommended by [Defendant] . . . could be installed."  *Id.*

On February 24, 2022, Defendant sent Plaintiff an invoice dated December 31, 2021 "for a total amount allegedly due, with reference to the Seakeeper project reflecting additional work purportedly done by [Defendant] for a total project cost now of $191,810.00 less some discounts."  *Id.* ¶ 14.  This was a 50 percent increase from the Parties agreed-upon costs.  *Id.*

Plaintiff has challenged Defendant's charges "that were not justified and refused to pay any additional amounts not previously agreed upon."  *Id.* ¶ 15.  Plaintiff also questioned Defendant's expertise and ability to complete the projects in a workmanlike and professional manner.  *Id.*

But due to Defendant's prolonged repairs and additional repairs resulting from Defendant's negligence damaging the Subject Vessel, the Subject Vessel has been drydocked for more than six months, resulting in costs to Plaintiff in the amount of $94,440.00.  *Id.* ¶ 16.  Plaintiff identifies the following "work and billing discrepancies" it has observed: (a) measurements and designs for the installation of the Seakeeper system were incorrect ; (b) the Seakeeper system Defendant sold to Plaintiff did not fit in the location agreed to as represented by Defendant; (c) Defendant cut the Subject Vessel's bulkhead in an attempt to install the Seakeeper stabilizer; (d) Defendant's invoices "vastly differ from the original charges agreed [to]"; (e) invoices dated December 31, 2021 "were all marked as past due even though they were dated the same exact day as the due

date"; (f) the Optimus steering system Defendant recommended and sold to Plaintiff could not be properly installed; (g) Defendant's finish work on the Subject Vessel was "substandard and had to be corrected by additional labor paid for by [Plaintiff]"; (h) "the back of the bulkhead was not laminated"; (i) Defendant charged Plaintiff for worker's compensation insurance that Plaintiff did not agree to pay; (j) there were duplicate line items across invoices; (k) the "first item on pg. 2 of Invoice 2009-14630 is a recommendation but has an amount of $8,200"; and (*l*) one invoice for the installation of the Seakeeper system reflects 590 hours of work, yet the Seakeeper stabilizer has not been installed. *See id.* ¶ 17(a)–(*l*). And Plaintiff alleges that Defendant "negligently cut the bulkhead and stringer and [Plaintiff] had to pay to have it repaired." *Id.* ¶ 18.

Accordingly, Plaintiff initiated this action against Defendant in this Court on March 14, 2022. *See generally* Compl. Plaintiff's Complaint asserts four claims against Defendant for: (1) breach of maritime contract for the repair of the Subject Vessel ("Count I"); (2) violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") ("Count II"); (3) negligent repair of the Subject Vessel ("Count III"); and (4) fraudulent inducement ("Count IV"). *See generally id.*

Now, Defendant moves to dismiss Counts II, III, and IV of the Complaint with prejudice and for Plaintiff's jury demand to be stricken. *See generally* Mot.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requirement "give[s] the defendant fair notice of what

the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alterations omitted).  The court takes the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

A complaint must contain enough facts to plausibly allege the required elements.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007).  A pleading that offers "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III.    DISCUSSION

Defendant moves to dismiss Plaintiff's FDUTPA, negligence, and fraudulent inducement claims in Counts II, III, and IV of the Complaint, respectively, and to strike Plaintiff's demand for trial by jury.  *See generally* Mot.  In its Response, Plaintiff affirmatively withdraws its (1) demand for attorney's fees in its claim for violations of the FDUTPA in Count II, (2) claim for negligence in Count III, and (3) demand for a jury trial.  *See generally* Resp.  Defendant's Motion will be denied as moot to the extent it raises arguments on those issues.  Consequently, the issues remaining before the Court are whether Federal maritime law preempts wholesale Plaintiff's claim for violations of the FDUTPA in Count II, and whether the maritime economic loss rule bars Plaintiff's fraudulent inducement claim in Count IV.  The Court first turns to Plaintiff's claim for violations of the FDUTPA.

### A.    FDUTPA

Defendant argues that Plaintiff's FDUTPA claim in Count II of the Complaint is wholly

5

preempted by Federal maritime law.  Mot. at 3–4.  Defendant cites to cases dismissing as preempted by Federal maritime law claims brought under state laws similar to the FDUTPA.  *Id.*

Plaintiff responds that Federal maritime law does not wholly preempt a claim brought for violations of the FDUTPA.  Resp. at 3–4.  Plaintiff cites cases from courts within this District holding that only the FDUTPA's fee-shifting provisions are preempted by Federal maritime law and unenforceable when this Court is sitting in admiralty, which is no longer implicated now that Plaintiff has withdrawn its request for attorney's fees in Count II.  *Id.* at 4.

In reply, Defendant argues that the cases Plaintiff cites acknowledge a split among courts within this District as to whether Federal maritime law wholly preempts FDUTPA claims, as opposed to only the FDUTPA's fee-shifting provisions for attorney's fees.  Reply at 2.  Defendant argues that, because maritime law governing conflicts between shipyards and ship owners is well-developed, there is no need to supplement general maritime law with Florida law via the FDUTPA.  *Id.* at 2–3.  Moreover, Defendant asserts that Plaintiff should not be permitted to "cherry pick" sections of the FDUTPA that apply in a case governed by Federal maritime law.  *Id.*

Defendant correctly observes that there is a split among courts within this District whether Federal maritime law wholly preempts FDUTPA claims, as opposed to preempting only the fee-shifting provisions therein.  *See CGK LLC v. Pantropic Power, Inc. et al.*, No. 20-CV-60730-WPD, 2020 WL 13356472, at *5 (S.D. Fla. June 29, 2020).

The split at issue and the authority underpinning it were analyzed at great length by Judge Moreno in *Jones Superyacht Miami, Inc. v. M/Y Waku*, 451 F. Supp. 3d 1335 (S.D. Fla. 2020).  There, the court noted that the split within this District arose from a broad reading of language following the Eleventh Circuit's more narrow holding in *Misener Marine Construction, Inc. v. Norfolk Dredging Co.*, 594 F.3d 832 (11th Cir. 2010) (holding that, in maritime cases, the

American Rule that each party bears its own attorney's fees applies, thus concluding that a Georgia statute "cannot be incorporated into substantive maritime law"). The court in *Jones* observed that the precise issue on appeal in *Misener* was whether the prevailing party could recover attorney's fees under a Georgia statute in a case arising under admiralty law, not the preemption of the entirety of that Georgia statute by Federal maritime law. *Jones*, 451 F. Supp. 3d at 1340–41 ("[N]o other section of the statute was on appeal, the appellate court could not, and did not, have an opportunity to hold that any other part of that act was inconsistent with principles of general maritime law.").

The court in *Jones* then noted that the plaintiff in *Jones* failed to argue how Federal maritime law preempts the substantive portions of the FDUTPA—the court instead found that FDUTPA directly advances a core aim of maritime law. *Id.* at 1341–42. Ultimately, *Jones* adopted the narrow view set forth by other courts in this District that Federal maritime law preempts only the attorney's fees provisions of the FDUTPA. *Id.* at 1342–43 (citing *Brown v. Oceania Cruises, Inc.*, No. 17-cv-22645-CMA, 2017 WL 10379580 (S.D. Fla. Nov. 20, 2017); *Barnext Offshore Ltd. v. Ferretti Grp. USA*, *Inc.*, No. 10-cv-23869-CMA, 2011 WL 13223746 (S.D. Fla. May 16, 2011); *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351 (S.D. Fla. 2009)).

The reasoning in *Jones* was later followed by Judge Dimitrouleas in *CGK LLC v. Pantropic Power, Inc. et al.*, No. 20-CV-60730-WPD, 2020 WL 13356472 (S.D. Fla. June 29, 2020).

This Court, like the court in *CGK*, agrees with the analysis in *Jones* that general maritime law does not wholly preempt claims under the FDUTPA. Rather, general maritime law precludes the recovery of attorney's fees under that statute. Here, Defendant moves to dismiss Plaintiff's claim under the FDUTPA in Count II as preempted wholesale, but much like in *Jones* Defendant offers no argument why the substantive portions of the FDUTPA conflict with general maritime law. *See Jones*, 451 F. Supp. 3d at 1341–42 (citing *Brown*, 2017 WL 10379580, at *7). Having

concluded that Plaintiff's FDUTPA claim is barred only as to its request for attorney's fees, and Plaintiff having withdrawn that request, the Court will deny Defendant's motion in part to the extent it seeks dismissal of Count II wholesale on preemption grounds.

### B.        Fraudulent Inducement

Next, Defendant argues that Plaintiff's fraudulent inducement claim in Count IV of the Complaint is barred by the maritime economic loss rule as a fraud claim inextricably tied to a breach of contract claim.  Mot. at 4–5.

Plaintiff responds that the maritime economic loss rule does not bar Plaintiff's fraudulent inducement claim.  Resp. at 4–5.  Moreover, Plaintiff contends that its fraudulent inducement claim is not inextricably intertwined with its breach of contract claim.  *Id.* at 5–6.  On this point, Plaintiff asserts its breach of contract claim "is based on the Defendant's failure to perform as contracted, while the Fraudulent Inducement claim is based on misrepresentations made prior to the contract." *Id.* at 6.

In reply, Defendant reiterates that Plaintiff's breach of contract and fraudulent inducement claims are inextricably intertwined and distinguishes the cases Plaintiff cites.  Reply at 3–4.

It is a well-established principle of Federal maritime law that "a party may not recover for economic losses not associated with physical damages."[2]  *Kingston Shipping Co. v. Roberts*, 667

---

[2]  It is not readily apparent whether the Parties agree that Federal maritime law governs Plaintiff's fraudulent inducement claim in Count IV, as neither Party expressly addresses in their briefing what the governing law is for this claim.  Defendant presumably takes the position that Federal maritime law governs Count IV, as it argues Count IV is barred by the maritime economic loss rule.  Plaintiff's position is less clear, as it cites to a Federal case applying Federal maritime law, Federal cases applying state law, including both Florida and Texas law, and Florida cases applying Florida law.  *See* Resp. at 4–5.  The Court applies Federal maritime law, and would do so even if Plaintiff argued that Florida law governed Count IV, for the same reasons as those set forth in *BVI Marine Construction Ltd. v. ECS-Florida, LLC.  See* No. 12-80225-CIV-Marra, 2013 WL 6768646, at *3–5 (S.D. Fla. Dec. 20, 2013) (finding that the maritime economic loss rule under Federal maritime law, not the economic loss rule under Florida law, governed claims for fraud in

F.2d 34, 35 (11th Cir. 1982). Thus, "the maritime Economic Loss Rule 'provides that a tort action may not lie where the basis for liability arises from a contract.'" *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1081 (S.D. Fla. 2019); *see also R/V Beacon, LLC v. Underwater Archeology & Expl. Corp.*, No. 14-CIV-22131, 2014 WL 4930645, at *5 (S.D. Fla. Oct. 1, 2014) ("[T]he maritime economic loss doctrine has been expanded to reach situations where a party is attempting to bring a breach of contract action couched as a tort.").

"A tort may be deemed independent of a contract and, therefore, not subject to the economic loss rule, where the allegedly tortious conduct is separate and unrelated to any contractual provisions." *McSweeney v. MSC Cruises (USA), Inc.*, No. 14-CIV-62402, 2015 WL 12543901, at *3 (S.D. Fla. Sept. 28, 2015). But where a fraud claim is "inextricably tied" to a breach of maritime contract claim, the maritime economic loss rule bars the fraud claim. *See R/V Beacon, LLC*, 2014 WL 4930645, at *6 (citing *St. Clair Marine Salvage, Inc. v. M/Y Blue Marlin*, No. 13-14714, 2014 WL 2480587, at * 4–5 (E.D. Mich. June 3, 2014)).

The Court agrees that Plaintiff's claim for fraudulent inducement is inextricably tied to its claim for breach of maritime contract. Plaintiff argues that Defendant's alleged "misrepresentations were made to induce Plaintiff into utilizing the services of the defendant for a price the Plaintiff never intended to adhere to." Resp. at 5. And as noted above, Plaintiff asserts its breach of contract claim "is based on the Defendant's failure to perform as contracted, while the Fraudulent Inducement claim is based on misrepresentations made prior to the contract." *Id.* at 6. However, it is apparent Plaintiff argues, without using the word "contract," that it was fraudulently induced *to enter into maritime contracts* with Defendant for the installation of the

---

the execution (performance) of the contract, fraudulent misrepresentation, and negligent misrepresentation, after applying the choice of law framework in *Diesel "Repower", Inc. v. Islander Investments Ltd.*, 271 F.3d 1318, 1323–24 (11th Cir. 2001)).

Equipment and repair of the Subject Vessel.  Here, the Complaint alleges that Defendant "made material representations to [Plaintiff] that the Vessel had undergone the requisite review and the Equipment recommended by [Defendant] was suitable for the vessel and would be safely and properly installed by [Defendant]."  Compl. ¶ 40.  Plaintiff claims it relied on these representations and "would not have hired, purchased equipment and professional services, continued to pay for, nor would it have incurred expenses and losses associated with the Equipment," for the work that is the subject matter of the Parties' maritime repair contracts.  *Id.* ¶ 42.  Because Plaintiff claims it was fraudulently induced to enter into maritime repair contracts, the Court finds that Plaintiff's fraudulent inducement claim is inextricably intertwined with its claim for breach of maritime contract.  *Cf. R/V Beacon*, 2014 WL 4930645, at *6 (finding fraud claim unrelated to breach of contract claim where the fraud claim was based on the defendants requesting money to repair a vessel and then converting that money for personal use, but where the breach of contract claim was based on the failure to return a vessel to a port specified in the contract).

Accordingly, Plaintiff's fraudulent inducement claim in Count IV is barred by the maritime economic loss rule.  To that end, Defendant's Motion will be granted in part and Count IV of the Complaint will be dismissed with prejudice.[3]

## IV.    CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant Starboard Yacht Group, LLC's Motion to Dismiss (ECF No. 11) is GRANTED IN PART, DENIED IN PART, and DENIED AS MOOT IN PART as set forth above.  It is further

---

[3]  Because Plaintiff's fraudulent inducement claim will be dismissed with prejudice, the Court need not determine if it has been adequately pled under Federal Rule of Civil Procedure 9(b).

ORDERED that Count IV of Plaintiff's Complaint is DISMISSED WITH PREJUDICE.  Plaintiff

is INSTRUCTED to file an Amended Complaint removing (1) its request for attorney's fees in

Count II, (2) Counts III (negligence) and IV (fraudulent inducement), and (3) its demand for trial

by jury.  Plaintiff's Amended Complaint is due within seven (7) days of the date of this Order.

    DONE AND ORDERED in Chambers at Miami, Florida this 16th day of June, 2022.

                                    K. MICHAEL MOORE
                                    UNITED STATES DISTRICT JUDGE

c:      All counsel of record