UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-60542-CIV-MOORE/LOUIS

MY BUDDY DAVIS LLC,

      Plaintiff/Counter-Defendant

vs.

STARBOARD YACHT GROUP, LLC

      Defendant/Counter-Plaintiff.

_____/

STARBOARD YACHT GROUP, LLC,

      Third-Party Plaintiff,

vs.

ONE 74' BUDDY DAVIS SPORTFISH
VESSEL, ITS ENGINES, TACKLE,
MACHINERY, COMPONENTS, TOOLS,
RIGGING, GEAR, BOATS,
APPURTENANCES, etc.

and

RODOLFO RODRIGUEZ-DURET,

      Third-Party Defendants.

_____/

**THIRD-PARTY DEFENDANTS'**
**MOTION TO DISMISS THE VERIFIED THIRD-PARTY COMPLAINT**

Third-Party Defendant Rodolfo Rodriguez-Duret; and My Buddy Davis, LLC, as Claimant Owner of the *In Rem* Third-Party Defendant One 74' Buddy Davis Sportfish Vessel; pursuant to Rules 12(b)(6) and 14(a)(2)(A) of the Federal Rules of Civil Procedure, move for the entry of an Order dismissing the third-party complaint (DE 30). The grounds for this motion are:

## I.      INTRODUCTION

The two-count amended complaint filed by Plaintiff My Buddy Davis LLC's ("My Buddy Davis") states claims against Defendant Starboard Yacht Group LLC ("Starboard") for breach of maritime contract (Count I) and violations of the Florida Deceptive and Unfair Trade Practices Act, §§501.201 *et seq.*, Florida Statutes (Count II). DE 27. Generally summarized, the claims allege that the parties entered into contracts through which Plaintiff purchased equipment through Defendant for Defendant to install on Plaintiff's vessel, and Defendant has not fulfilled its obligations even though Plaintiff has satisfied its financial obligations.

Particularly relevant to this Motion is Plaintiff's and Defendant's agreement for the purchase and installation of equipment manufactured by Seakeeper, Inc. – a "Seakeeper 18 Gyro Stabilizer with 2000 hour/2 year warranty." DE 27 at ¶6; DE 27-1.[1] Defendant alleges that is a "franchisee and certified dealer, installer, and repairer of Seakeeper stability Systems." DE 30 at ¶26. The written contract between Plaintiff and Defendant for the purchase and installation of the Seakeeper, Inc. equipment prominently displays Seeakeeper Inc.'s name and logo on each page of the contract. DE 27-1; DE 30-1.

Defendant answered the amended complaint and asserted a counterclaim against Plaintiff for breach of repair contract. DE 29. Defendant contemporaneously filed a third-party complaint

---

[1] In layman's terms, a "stabilizer" is a piece of equipment that is installed in a vessel (here, underneath the existing floor of the vessel) that functions like a gyroscope that spins in order to counteract or counterbalance the left-right tilting of the vessel.

against two third-party defendants: One 74' Buddy Davis Sportfish Vessel, which is the vessel owned by Plaintiff aboard which the equipment was to be installed (the "Vessel"); and Rodolfo Rodriguez-Duret, whom the third-party complaint describes as "the controlling owner and sole member of" Plaintiff.  DE 30.

The third-party complaint purports to state an *in rem* claim against the Vessel for "foreclosure of a maritime lien for maritime necessaries/breach of contract" (Count I).  That claim alleges that Plaintiff has not paid all of the amounts supposedly due to Defendant, thus entitling Defendant to arrest the Vessel and sell it in satisfaction of Plaintiff's allegedly outstanding debt.

The third-party complaint purports to state two claims against Mr. Rodriguez-Duret.  The first claim, in Count II, is for tortious interference.  It alleges that Mr. Rodriguez-Duret, through the making of allegedly false statements, has tortuously interfered with Defendant's relationship with Seakeeper, Inc.   The second claim against Mr. Rodriguez-Duret, in Count III, is for defamation and is premised upon allegedly false and defamatory written statements.

The third-party defendants – the Vessel and Mr. Rodriguez-Duret – move to dismiss the third-party complaint in its entirety.  First, the third-party complaint fails because its claims are not the type of limited third-party claims that are permitted by Rule 14 of the Federal Rules of Civil Procedure.  Second, the third-party claims against Mr. Rodriguez-Duret, which are for tortious interference and defamation, fail to state a claim.

## II.    ARGUMENT

**A.    THE THIRD-PARTY COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE IT EXCEEDS THE SCOPE OF THE CLAIMS PERMITTED BY RULE 14.**

Plaintiff sued Defendant for money damages arising from Defendant's failure to perform its contractual obligations, and for Defendant's deceptive and unfair and conduct in its dealings

with Plaintiff.  Defendant then filed the third-party complaint that purports to assert claims against the Vessel and Mr. Rodriguez-Duret, as third-party defendants.  However, the third-party claims do **not** allege that if Defendant is liable to Plaintiff in the main action, then the third-party defendants are responsible for that liability.  The third-party complaint should be dismissed in its entirety because it is a misuse of Rule 14 of the Federal Rules of Civil Procedure, which authorizes and governs third-party practice.

Rule 14(a)(1) provides that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty *who is or may be liable to it for all or part of the claim against it*." (emphasis added).  "'The purpose of this rule is to permit a defending party to join an absentee for the purpose of deflecting to that absentee all or part of its potential liability to the plaintiff on the underlying claim.'" *See U.S. Distributors, Inc. v. Block*, 2010 WL 337669, at *2 (S.D. Fla. Jan. 22, 2010) (quoting 3 James William Moore *et al.*, *Moore's Federal Practice*, §14.03[1] (3d ed. 2009)).

> Rule 14 authorizes only a narrow category of claims and parties that may be impleaded: the nonparty must be either liable or potentially liable for all or part of the claim against the defendant.  In other words, the claim against the third-party defendant must be based upon plaintiff's claims against defendant in the main action.  It is not enough that the alleged third-party claim simply arises from the same transaction or set of facts as the original claim.  That is, the nonparty's liability on the third-party plaintiff's claim must be in some way dependent on the outcome of the main claim.
>
> \*          \*          \*
>
> Simply put, a claim against a nonparty is not permissible as a third-party claim just because it arises out of the same general set of facts as the main claim.  Instead, a putative third-party plaintiff must show something more: that the putative third-party defendant is in some way actually responsible for the third-party plaintiff's liability in the main action.

3

*See Produce Pay, Inc. v. Agrosale, Inc.*, 553 F.Supp.3d 1140, 1144 (S.D. Fla. 2021) (internal quotation and citation marks omitted); *see also Ryder Truck Rental, Inc. v. Logistics Resource Solutions, Inc.*, 2022 WL 2657272, at *13 (S.D. Fla. Feb. 28, 2022) (same).

"[T]he district court's initial determination must be whether the claims asserted in the third-party complaint are claims that, if successful, would render the third-party defendant liable for all or part of the damages that the plaintiff might obtain against the defendant/third-party plaintiff under the original complaint. If the claims asserted in the third-party complaint are not of such a nature, the district court *must* strike the third-party complaint because it would not be authorized by Rule 14." *See Block*, 2010 WL 337669, at *2 (emphasis in original).

Here, Plaintiff sued Defendant for money damages based on Defendant's failure to fulfill its contractual obligations relating to the supply and installation of equipment, and for Defendant's deceptive and unfair and conduct in its dealings with Plaintiff. DE 27. The third-party complaint fails at the threshold because the third-party claims against the Vessel and Mr. Rodriguez-Duret ***do not and cannot*** allege that the Vessel and Mr. Rodriguez-Duret are in some way actually responsible for Defendant's liability to Plaintiff in the main action. Put another way, if Defendant were somehow to prevail on the third-party claims, that result would ***not*** render the third-party defendants responsible for any of Defendant's liability to Plaintiff. The third-party defendants are not alleged to have caused Defendant's liability to Plaintiff, nor are they alleged to be otherwise responsible for that liability.

One additional aspect of Rule 14 should be addressed. Rule 14(c)(1) provides:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—***either to the plaintiff or to the third-party plaintiff***—for remedy over, contribution, or otherwise on account of

the same transaction, occurrence, or series of transactions or occurrences. (emphasis added).

"That is, Rule 14(c) permits a defendant to implead a party for two purposes: (1) to seek contribution or indemnification from the third-party defendant, and (2) to tender the third-party defendant to the plaintiff."  *See Ambraco v. Bossclip, B.V.*, 570 F.3d 233, 242-43 (5th Cir. 2009) (citing *Texas A&M Research Foundation v. Magna Transportation, Inc.*, 338 F.3d 394, 399-400 (5th Cir. 2003)); *see also In the Matter of Delta Towing LLC*, 2016 WL 5923426, at *4 (S.D. Ala. Oct. 11, 2016) (ultimately quoting *Abramco*, 570 F.3d at 242) (same); *Riverway Co. v. Trumbull River Services, Inc.*, 674 F.2d 1146, 1154 (7th Cir. 1982) (quoting 3 J. Moore, Federal Practice P 14.34 (2d ed. 1980)) (addressing Rule 14(c) and explaining that what "distinguishes it from traditional third-party practice" is that under Rule 14(c) "a third-party defendant may be brought in not only on a theory of liability over to the third-party plaintiff for any recovery the original plaintiff may secure from such third-party plaintiff (the original defendant), but also on a theory that the third-party defendant is directly liable to the original plaintiff either jointly with the original defendant or instead of the original defendant") (parenthetical in original).

Here, Plaintiff's claim against Defendant for breach of maritime contract is a maritime or admiralty claim, thus potentially triggering Rule 14(c).  DE 27 at ¶20.  ***However***, Defendant's third-party claims against the Vessel and Mr. Rodriguez-Duret are ***not*** indemnification- or contribution-type claims alleging that if Defendant is liable to Plaintiff, then the third-party defendants are liable to Defendant; and Defendant is ***not*** tendering the third-party defendants to

5

Plaintiff or otherwise alleging that they are directly liable to Plaintiff.[2]   The third-party complaint should be dismissed in its entirety because it is not permitted by Rule 14.

**B.      THE THIRD-PARTY CLAIMS AGAINST MR. RODRIGUEZ-DURET SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

Counts II and III of the third-party complaint purport to state claims against Mr. Rodriguez-Duret for tortious interference and defamation, respectively.  Even if these claims could be asserted as third-party claims – which, as discussed above, they cannot – they would nonetheless have to be dismissed because they fail to state a claim.

**1.      Count II Fails To State A Claim For Tortious Interference.**

Count II of the third-party complaint purports to state a claim against Mr. Rodriguez-Duret for tortious interference.  Defendant alleges that Mr. Rodriguez-Duret tortiously interfered with Defendant's relationship with Seakeeper, Inc. ("Seakeeper").  DE 30 at ¶25.  This claim should be dismissed with prejudice for two reasons.  First, the claim is barred by the single publication rule because it is premised upon the making of allegedly false statements.  Second, Defendant does not

---

[2] "In addition, the Rule requires the third-party plaintiff [] to assert an action sounding in admiralty or maritime . . . ."  *See Ambraco*, 570 F.3d at 243.  The third-party claims against Mr. Rodriguez-Duret, which are for tortious interference and defamation, are ***not*** admiralty or maritime claims – and thus fall outside the scope of Rule 14(c) – because, among other reasons, the third-party claims do not allege a tort that occurred on navigable water or an injury suffered on land that was caused by a vessel on navigable water.  *See, e.g. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (addressing the "location" aspect of the "location/connection" test that is used to determine the existence of maritime jurisdiction).

and cannot allege two of the requisite elements of the tort: unjustified interference and that Seakeeper breached its relationship with Defendant.

    *i.       The Claim Is Barred By The Single Publication Rule.*

Count II alleges that Mr. Rodriguez-Duret tortiously interfered with the relationship between Defendant and Seakeeper by making allegedly false statements regarding Defendant. DE 30 at ¶¶25, 32. Simultaneously, Count III of the third-party complaint purports to state a claim against Mr. Rodriguez-Duret for defamation based on the same allegedly false statements. And, the two counts allege the same harm arising from the allegedly false statements. *Compare id.* at ¶33 with ¶43. Count II fails to state a claim for tortious interference – and should be dismissed with prejudice – because it is barred by the single publication rule.

"Florida's single publication/single action rule precludes the recasting of defamation claims as additional, distinct causes of action in tort if all the claims arise from the same defamatory publication." *See International Security Management Group, Inc. v. Rolland*, 271 So.3d 33, 48 (Fla. 3d DCA 2019); *see also Ovadia v. Bloom*, 756 So.2d 137, 140-41 (Fla. 3d DCA 2000) (same); *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp*, 831 So.2d 204, 208 (Fla. 4th DCA 2002) ("In Florida, a single publication gives rise to a single cause of action."). "'The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm.'" *See Callaway*, 831 So.2d at 208 (*quoting Messenger v. Grunner + Jahr USA Publ'g*, 994 F.Supp. 525, 531 (S.D.N.Y. 1998)).

Count II, for tortious interference, is expressly premised upon the making of allegedly false statements regarding Defendant. Count III, for defamation, is premised upon those same

statements, and alleges the same harm arising from those statements.  Count II should be dismissed with prejudice because it is barred by the single publication rule.

        *ii.      The Claim Fails Because It Does Not And Cannot Allege Two Requisite Elements.*

Count II purports to state a claim against Mr. Rodriguez-Duret for tortious interference with the relationship between Defendant and Seakeeper.  DE 30 at ¶25.  "'The elements of tortious interference with a business relationship are (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'"  *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)) (internal quotation marks and brackets omitted); *see also Networkip, LLC v, Spread Enterprises, Inc.*, 922 So.2d 355, 357-58 (Fla. 3d DCA 2006) (same).  Even if the claim were not barred by the single publication rule, Count II would still have to be dismissed with prejudice because Defendant does not and cannot allege facts supporting the third and fourth elements.

With respect to the <u>third element</u> – which requires unjustified interference with Defendant's relationship with Seakeeper – "[f]or the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship."  *See Salit v. Ruden McClosky et al.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999); *see also Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (quoting *Salit*, 742 So.2d at 386) (same).  "'A defendant is not a "stranger" to a business relationship if the defendant has ***any*** beneficial or economic interest in, or control over that relationship.'"  *See Mattocks v. Black Entertainment Television, LLC*, 43 F.Supp.3d 1311, 1319 (S.D. Fla. 2014) (quoting *Palm Beach Cnty. Health*

8

*Care Dist. V. Prof'l Med. Educ., Inc.*, 13 So.3d 1090, 1094 (Fla. 4th DCA 2009)) (emphasis added) (additional internal quotation marks omitted). Under that standard – and based on the allegations of the third-party complaint – Mr. Rodriguez-Duret is ***not*** a "stranger" to the relationship between Defendant and Seakeeper.

Defendant alleges that it has a "preexisting business relationship with Seakeeper to be a franchisee and certified dealer, installer, and repairer of Seakeeper stability Systems." DE 30 at ¶26. Defendant entered into a contract with Plaintiff for the purchase and installation of a Seakeeper stability system aboard the vessel, and each page of the contract prominently displays Seakeeper's name and logo. DE 27-1; DE 30-1. The contract is signed on behalf of Plaintiff by Mr. Rogriguez-Duret, who is Plaintiff's "controlling owner and sole member . . . ." DE 27-1; DE 30-1; DE 30 at ¶8.

Defendant holds itself out as being Seakeeper's "franchisee and certified dealer, installer, and repairer of Seakeeper stability Systems." When Defendant entered into a contract, signed by Mr. Rodriguez-Duret, to sell and install a Seakeeper stability system aboard the vessel, that clearly gave Mr. Rodriguez-Duret an economic or beneficial interest in how Defendant performs its work aboard the vessel as Seakeeper's "franchisee and certified dealer, installer, and repairer of Seakeeper stability Systems." There simply is no support for the notion that it would be unjustified or otherwise unlawful for Mr. Rodriguez-Duret to contact Seakeeper to complain or otherwise report issues regarding the work that Seakeeper's "franchisee and certified dealer, installer, and repairer" is performing aboard the vessel. *See, e.g., W.D. Sales and Brokerage LLC v. Barnhill's Buffet of Tenn., Inc.*, 362 F. App'x 142, 143-44 (11th Cir. 2010) (recognizing that the customer is not a stranger to the relationship between the supplier of food products and the broker who sells

9

the supplier's products to the customer).  Count II should be dismissed with prejudice because Defendant does not and cannot allege that Mr. Rodriguez-Duret is a "stranger."

The <u>fourth element</u> of tortious interference requires **Seakeeper** to have breached its relationship with Defendant as a result of the alleged interference.  *See, e.g., Duty Free Americas,* 797 F.3d at 1279 (quoting *Ethan Allen,* 647 So.2d at 814) ("'The elements of tortious interference with a business relationship are . . . damage to the plaintiff *as a result of the breach of the relationship.*'") (emphasis added); *Seminole Tribe of Florida v. Times Publishing Co., Inc.*, 780 So.2d 310, 315 (Fla. 4th DCA 2001) (citing *Salit*, 742 So.2d at 385) (describing the elements as requiring the defendant to "induce[] or otherwise cause[] the third person not to perform; and [] damage to the plaintiff resulting from the third person's failure to perform").  The third-party complaint fails to state a claim for tortious interference because it completely fails to allege that Seakeeper breached its relationship with Defendant.

Defendant alleges only that it "has been damaged, including but not limited to lost opportunities, loss of profit, lost volume sales, damage to business reputation with Seakeeper, loss of business to other Seakeeper vendors, legal fees and other damages."  DE 30 at ¶33.  There are two reasons those statements are incapable of alleging the fourth element of the claim.  *First*, they are **not** allegations that **Seakeeper** breached its relationship with Defendant.  *Second*, they are precisely the type of conclusory statements that are incapable of stating a claim because they are wholly devoid of supporting factual allegations.  *See, e.g., Geller v. Von Hagens*, 2010 WL 4867540, at *5 (M.D. Fla. Nov. 23, 2010) ("Regarding damages, where there are no damages to the plaintiff, he or she has no cause of action for interference with an advantageous business relationship.  The same flaw is evident throughout Plaintiffs' Complaint:  the facts are not plead

10

in accordance with the new *Iqbal*[3] standard."); *Indiana Autobody Assn., Inc. v. State Farm Mutual Automobile Ins. Co.*, 2015 WL 12830490, at *4 (M.D. Fla. Feb. 25, 2015) (report and recommendation adopted at 2015 WL 12836091 (M.D. Fla. March 30, 2015)) (addressing substantively identical element under Indiana law) ("Because Plaintiffs have not alleged that any third party failed to perform a contractual duty owed to a Plaintiff, they cannot 'show' that Defendants induced any breach or nonperformance, and thus cannot plausibly plead a claim for tortious interference with contract."); *Peerless Self Storage, LLC v. City of Rossville, Georgia*, 2010 WL 11493306, at *9 (N.D. Ga. Sept. 21, 2010) (addressing substantively identical element under Georgia law) ("In any event, as the Rossville Defendants correctly point out, Plaintiff failed to allege all the elements required for a tortious interference claim.  Specifically, Plaintiff failed to allege that a party or third parties discontinued a relationship with Plaintiff, to Plaintiff's detriment, or refused to enter into a relationship with Plaintiff, to Plaintiff's detriment.").

Count II, for tortious interference, should be dismissed with prejudice because it does not state a claim and cannot be amended to do so.

### 2.     Count III Fails To State A Claim For Defamation.

Count III of the third-party complaint purports to state a claim against Mr. Rodriguez-Duret for defamation.  To prevail on a cause of action for defamation, a plaintiff must plead (and later

---

[3] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.").

prove) the following elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *See Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008).  Count III should be dismissed for failure to state a claim.

The first problem with Count III relates to pleading.  The claim for defamation is premised upon allegedly defamatory *written* statements.  DE 30 at ¶¶36-41.  However, none of the written statements is quoted or otherwise reprinted in the body of the third-party complaint and, with the exception of some Instagram posts that are attached as Exhibit C to the third-party complaint, none of the allegedly defamatory written statements are attached to the pleading.  Although claimants suing for allegedly defamatory oral statements (slander) are not required to quote the statements at issue, claimants suing for allegedly defamatory *written* statements (libel) generally must do so. *See, e.g., Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*, 413 So.2d 51, 55 (Fla. 3d DCA 1982); *Ground & Pipe Technologies, LLC v. Firstliner Technologies, Inc.*, 2005 WL 8163041, at *2 (N.D. Fla. Oct. 5, 2005) (citing *Nezelek*, 413 So.2d at 55).

Requiring the claimant to "set out" the allegedly defamatory written words serves the important purpose of permitting the Court to discharge its gatekeeping function in connection with defamation claims.  For example, "'[a] false statement of fact is the *sine qua non* for recovery in a defamation action.'" *See Hallmark Builders, Inc. v. Gaylord Broadcasting Co.*, 733 F.2d 1461, 1464 (11th Cir. 1986) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983)); *see also Fortson v. Colangelo,* 434 F.Supp.2d 1369, 1378 (S.D. Fla. 2006) (same and recognizing a false statement of fact as "[t]he first element of the claim"); *Zorc v. Jordan*, 765 So.2d 768, 771 (Fla. 4th DCA 2000) (quoting *Friedgood v. Peters*, 521 So.2d 236, 242 (Fla. 4th

DCA 1988)) ("'A false statement of fact is absolutely necessary if there is to be recovery in a defamation action.'").

"True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) ("*Turner II*"). "**It is for the Court to decide, as a matter of law**, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole." *See Fortson*, 434 F.Supp.2d 1369, 1379 (S.D. Fla. 2006) (emphasis added); *see also Turner II*, 879 F.3d at 1262-63 (same) (affirming dismissal for failure to state a claim); *Dibble v. Avrich*, 2014 WL 5305468, at *3 (S.D. Fla. Oct. 15, 2014) (same); *Skupin v. Hemisphere Media Group, Inc.,* 314 So.3d 353, 356 (Fla. 3d DCA 2020) (same) (affirming dismissal for failure to state a claim).

Similarly, "[i]t is elementary that the court must, as a threshold consideration, make a determination whether a statement is reasonably subject to a defamatory interpretation." *See Nelson v. Associated Press, Inc.*, 667 F.Supp. 1468, 1477 (S.D. Fla. 1987); *see also Turner II*, 879 F.3d at 1262-63 ("Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation and questions of law for the court.").

By not quoting or attaching the allegedly defamatory written statements to the third-party complaint, Defendant is trying to prevent the Court from discharging its gatekeeping function of examining the statements, and the context in which they appear, to determine whether they are, in the first instance, statements of fact and, additionally, whether they are capable of defamatory meaning.  A claimant armed with nothing more than conclusions – here, conclusory statements that absent written statements are "false," "libelous," and "defamatory" – does not state a claim

13

and cannot proceed past the motion to dismiss stage.  *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The only written statements attached to the third-party complaint are Instagram posts that appear in the pleading's Exhibit C.  DE 30-3; *see also* DE 30 at ¶37.  The allegations of the third-party complaint do not identify which of the statements on that page is/are the one/ones on which Defendant is suing.  The exhibit, itself, has one sentence and part of another that is highlighted in yellow.  It is unclear whether that highlighting is meant to identify the specific statement over which Defendant is suing (and the third-party complaint says nothing about the highlighting), but, nonetheless, the highlighted portions read: "Only way it could go faster is (sic) my meet (sic) with the state attorney's office goes well.  If they decide to add criminal theft charges, [then it will move faster.]"[4]

This statement is not actionable in a claim for defamation because Defendant has not sufficiently pleaded falsity.  A "statement is not considered false unless it would have a different effect on the mind of the reader from that which ***the pleaded truth*** would have produced." *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (emphasis added); *see also Turner v. Wells*, 198 F.Supp.3d 1355, 1365 (S.D. Fla. 2016) ("*Turner I*") (quoting *Masson*, 501 U.S. at 516) (same); *id.* (quoting *Smith v. Cuban American National Foundation*, 731 So.2d 702, 707 (Fla. 3d DCA 1999)) ("Falsity exists only if 'the publication is substantially and materially false, not just if it is technically false.'").  Defendant makes the conclusory statement that the Instagram post is "false" (¶¶36-37), but Defendant does not plead the alleged truth.  To the extent that Defendant is suing over the highlighted portions, is Defendant's position that the statement is false because Mr. Rodriguez-Duret did not meet with the State Attorney?  Is Defendant's position

---

[4] The material that appears in brackets is the end of the sentence that is only partially highlighted.

that this statement is false for some other reason? Defendant's conclusory statement of falsity is insufficient to state a claim premised upon the highlighted sentence in Exhibit C.

Count III of the third-party complaint should be dismissed for failure to state a claim.

### III.   CONCLUSION

For these reasons, the third-party complaint should be dismissed.

Respectfully submitted,

HOLLAND & KNIGHT LLP
*Attorneys for Third-Party Defendant*
*Rodolfo Rodriguez-Duret*
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

By: /s/  Scott D. Ponce
Scott D. Ponce (FBN 0169528)
sponce@hklaw.com

BLANCK & COOPER, P.A.
*Attorneys for Third-Party Defendant Vessel*
5730 S.W. 74th Street, Suite #700
Miami, Florida 33143
Phone: (305) 663-0177

By: /s/  Robert W. Blanck
Robert W. Blanck, Esq.
Florida Bar Number: 311367
Email: rblanck@shiplawusa.com
William B. Blanck, Esq.
Florida Bar Number: 1013889
Email: wblanck@shiplawusa.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 26, 2022 I filed this document through CM/ECF, which will serve a copy on all counsel of record.

By: /s/  Scott D. Ponce

15

#177063031_v1